IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



QUINCYE SIMMONS,

    Plaintiff,

v.                                                Civil Action No. 3:07CV172

D.B. EVERETT, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this action under 42 U.S.C. § 1983 alleging that Defendants Everett, Clark, Schilling, and Ulep[1] violated his rights under the Eighth Amendment.[2] Plaintiff asserts that he is entitled to injunctive and declaratory relief and monetary damages based on the following claims:

| | |
|---|---|
| Claim 1 | Officer Clark maliciously used excessive force and subjected Plaintiff to cruel and unusual punishment when she shot Plaintiff in the foot while attempting to quell an attack by another inmate on a prison officer. |
| Claim 2: | Defendants Everett, Schilling, and Dr. Ulep are deliberately indifferent to Plaintiff's need for medical treatment, because they have failed to schedule corrective surgery for the arches of Plaintiff's feet and have not made Plaintiff an appointment with a neurologist to assess the nerve damage to his foot. |

This matter is before the Court on the motions for summary judgment filed by defendants Everett, Clark, and Schilling ("Correctional Defendants"), and by Dr. Ulep. Plaintiff has filed a

---

[1] D.B. Everett is the Warden at Sussex II State Prison ("Sussex"); V. Clark was a Correctional Officer at Sussex at the time of the events giving rise to this lawsuit; Fred Schilling is the Health Services Director for the Virginia Department of Corrections ("VDOC"); and Benjamin Ulep, M.D. ("Dr. Ulep") is the prison physician at Sussex.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

response in opposition to the Correctional Defendants' motion for summary judgment, and a response in opposition to Dr. Ulep's motion for summary judgment.[3] Dr. Ulep has filed a reply to Plaintiff's response.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is to be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ.

---

[3] On December 13, 2007, the Court received a self-styled "Motion for Continuance" from Plaintiff, wherein Plaintiff requested the Court to toll the twenty-day time period for responding to the Correctional Defendants' motion for summary judgment. Plaintiff stated that because Dr. Ulep had not yet been served with a copy of his complaint, he wanted to wait to file his response to the Correctional Defendants' motion until Dr. Ulep had filed his answer, so that he could "respond all at one time instead of in parts." (Pl.'s Mot. for Cont. at 2.) However, on December 24, 2008, before the Court had ruled on this motion, Plaintiff timely filed his response to the Correctional Defendants' motion for summary judgment. Thereafter, Petitioner filed a separate response to Dr. Ulep's motion for summary judgment. For these reasons, Plaintiff's motion for a continuance (Docket No. 25) will be DENIED as moot.

2

P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless,"'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (*quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)).

In support of their motions for summary judgment, the defendants have submitted affidavits, copies of the pertinent VDOC regulations, copies of Plaintiff's grievances, and copies of Plaintiff's medical records. Plaintiff has responded by submitting his own unsworn statement, copies of his grievances, and drawings he made of his foot. Because Plaintiff's complaint was not verified, and because the responses he submitted in opposition to the Correctional Defendants' motion for summary judgment and to Dr. Ulep's motion for summary judgment were not sworn or otherwise subscribed pursuant to 28 U.S.C. § 1746,[4] the unsworn allegations contained in these documents are inadmissable for summary judgment purposes. Fed. R. Civ. P. 56(e)(2); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998) (*citing Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)); *cf. United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) (emphasizing that unsworn argument does not constitute evidence), *cert. denied*, 127

---

[4] Although Plaintiff attached a certificate of service that was sworn and notarized to each of his responses, because his responses were unsworn and did not meet the requirement of 28 U.S.C. § 1746, the Court will disregard Plaintiff's responses as unsworn statements. *See Hart v. Lutz*, 102 F. App'x 10, 13 (6th Cir. 2004) (No. 03-1648), *available at* 2004 WL 954373, at *2 (*citing Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363 n.3 (6th Cir. 2001); *Pollock v. Pollock*, 154 F.3d 601, 611-12 n.20 (6th Cir. 1998)).

3

S. Ct. 553 (2006). In light of the foregoing principles and submissions, the facts set forth below are considered established for summary judgment purposes.

## II. FACTUAL BACKGROUND

On April 6, 2006, an inmate in Plaintiff's unit attacked a prison guard. Plaintiff was not involved in the incident and was in his cell with his cell door closed and locked at the time of the attack. Officer Clark, who was in the control booth, observed the attack. She verbally ordered the inmate to stop attacking the guard and placed a call for emergency assistance. When the inmate refused to stop attacking the prison guard, Officer Clark picked up a shotgun and attempted to fire a blank warning round, but the shotgun only clicked and did not fire or make a sound. Officer Clark then chambered the weapon and fired the first round of rubber bullets. As the inmate continued his assault on the prison guard, Officer Clark fired two additional rounds.

When Plaintiff heard the commotion going on outside his cell, he went to the door of his cell to look out the window and rubber pellets ricocheted under his cell door and hit his feet. As a result, Plaintiff suffered multiple contusions and abrasions to his feet. After Warden Everett and other prison officers responded to Officer Clark's call for help, the doors to the cells in Plaintiff's unit were opened. Plaintiff emerged from his cell and was placed in a wheelchair and taken to the medical center. A nurse then cleaned and bandaged Plaintiff's feet and his ankle. Plaintiff was observed to ambulate without difficulty and all of his toes exhibited normal movement. A small hematoma, about 10-12 millimeters in diameter was noted on Plaintiff's left instep. Plaintiff was given a five-day supply of Motrin medication for pain. Plaintiff was seen by Dr. Ulep four days later, on April 10, 2006, after complaining of numbness in his right foot and that a blister had developed on the arch of his left foot. The arch of Plaintiff's left foot was

scrubbed with betadine and Dr. Ulep drained the blister from Plaintiff's foot using a needle. Dr. Ulep ordered that x-rays be taken of both of Plaintiff's feet and advised Plaintiff to follow-up with the nurse in five to seven days so she could check for signs of infection. The next day, April 11, 2006, x-rays were taken.

Although Plaintiff did not submit a request for a follow-up appointment with the medical center, he was seen by a nurse on April 17, 2006, as a result of Dr. Ulep's April 10, 2006 order that Plaintiff be checked in five to seven days for symptoms of infection. There were no signs of infection; however, Plaintiff did complain of numbness in his foot. Plaintiff was informed that the numbness was a result of the rubber pellets and would gradually fade.

On July 10, 2006, Plaintiff was seen by the medical center in response to his complaints of falling arches. Although Plaintiff had previously been given arch supports by prison doctors,[5] Plaintiff stated that he had been experiencing more pain in his arches since he was shot in his left arch on April 6, 2006. The nurse noted that there was no swelling in Plaintiff's left arch and that the area of his foot that had been hit by the pellet had healed. At Plaintiff's request, the nurse scheduled an appointment with Dr. Ulep. Plaintiff was seen by Dr. Ulep on July 14, 2006. Dr. Ulep informed Plaintiff that, although his arches were high, the x-rays that had been taken of Plaintiff's feet on April 11, 2006, were normal. Dr. Ulep advised Plaintiff that his chronic foot pain could be due to Plaintiff playing sports and failing to wear his arch supports. Dr. Ulep advised Plaintiff that he did not need orthopaedic shoes but that Plaintiff could order special athletic shoes, which complied with prison restrictions but were more comfortable than the thin

---

[5] Plaintiff's prison medical records indicate that Plaintiff previously complained of falling arches and that arch supports were ordered for him in 1998. (Def. Ulep's Mot. for Summ. J., Ex. B at PHS108-0017.)

5

unpadded canvas shoes supplied to inmates in the prison. Dr. Ulep wrote an order for the custodial staff to allow Plaintiff to wear the more comfortable athletic shoes. Since July 14, 2006, until his commencement of this suit in March of 2007, Plaintiff did not complain of foot pain although he was seen numerous times by medical staff for other ailments. In his affidavit, Dr. Ulep represents that, if Plaintiff were to submit a sick call request, Dr. Ulep will re-evaluate the condition of Plaintiff's feet. (Ulep Aff., Def. Ulep's Mot. for Summ. J., Ex. A at ¶ 14.)

### III. EIGHTH AMENDMENT ANALYSIS

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate: "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (*quoting Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). For example, when an inmate challenges his conditions of confinement, he must show: "(1) a serious deprivation of a basic human need; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (*citing Wilson*, 501 U.S. at 301-03). Deliberate indifference requires the plaintiff to produce evidence that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

When an inmate challenges the conduct of prison officials in responding to a prison disturbance, he must meet a more demanding subjective component and a less demanding objective component. In that context, whether the prison official acted with a sufficiently culpable state of mind "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson*, 503 U.S. at 6 (*quoting Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The *Whitley* standard applies not only to riots, but also to the measured actions of prison officials in attempting to manage the ongoing violent and disruptive conduct of a particular inmate. *See LeMaire v. Maass*, 12 F.3d 1444, 1452-53 (9th Cir. 1993); *cf. Clement v. Gomez*, 298 F.3d 898, 903-04 (9th Cir. 2002) (holding that bystander prisoners who were exposed to pepper spray when prison officials dispensed spray across their pod area to break up a fight were not subjected to excessive force).

In determining whether prison officials have acted maliciously and sadistically, it is appropriate to consider: "[1] the need for application of force, [2] the relationship between that need and the amount of force used, [3] the threat reasonably perceived by the responsible officials, and [4] any efforts made to temper the severity of a forceful response." *Benjamin*, 77 F.3d at 762 (alterations in original) (*quoting Hudson*, 503 U.S. at 7) (internal quotation marks omitted). In conducting the subjective analysis, the absence of serious injury is also a relevant, but not a dispositive, factor to be considered. *Id.* (*citing Hudson*, 503 U.S. at 7). As to the objective component of an Eighth Amendment claim of the sort presented here, the United States Court of Appeals for the Fourth Circuit has held that, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his

injury is *de minimis.*" *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc). "The *de minimis* injury exception stems from the recognition that there is 'a de minimis level of imposition [of punishment] with which the Constitution is not concerned.'" *Carr v. Deeds*, 453 F.3d 593, 606 n.4 (4th Cir. 2006) (alteration in original) (*quoting Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). As explained below, Plaintiff fails to satisfy either the subjective or the objective elements for his claims.

### A. Excessive Force Claim

Plaintiff's unsworn conclusory claim that Officer Clark maliciously and intentionally shot him to cause him pain, rather then to stop the attack another inmate had launched on a prison guard, is belied by the undisputed fact that Plaintiff was in his cell, with the door closed and locked, at the time Officer Clark shot the rubber pellets at the fighting inmate. Furthermore, the Constitution allows prison guards to quell violence in the prison with *deadly* force, *Whitley*, 475 U.S. at 320-26, and Officer Clark's use of *non-deadly* force in the circumstances of this case was clearly justified, measured, and reasonable. Indeed, all of the pertinent *Whitley* factors reflect that Officer Clark's shooting of the rubber pellets was "in a good faith effort to maintain or restore discipline," rather than "maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (internal quotation marks omitted). Although any injury to an innocent bystander such as Plaintiff is unfortunate, the record before the Court establishes that Officer Clark applied a reasonable level of force in a good faith effort to restore order. No evidence exists of a malicious attempt to cause harm to Plaintiff or to any inmate. *Id.*; *Hudson*, 503 U.S. at 6. Accordingly, Plaintiff's claim against Officer Clark, Claim 1, will be DISMISSED.

## B. Deliberate Indifference

In order to survive summary judgment with respect to Claim 2, Plaintiff must demonstrate that Dr. Ulep, Schilling, and Everett were deliberately indifferent to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). "Deliberate indifference is a very high standard-a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (*citing Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). "Deliberate indifference requires a showing that the defendants . . . actually knew of and ignored [an inmate's] serious need for medical care." *Young v. City of Mount Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001) (*citing White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997)). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (*citing Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977); *see also Kersh v. Bounds*, 501 F.2d 585, 588-89 (4th Cir. 1974). Furthermore, absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (*citing Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

Plaintiff fails to direct the Court to evidence to support his general claim that Schilling, Everett, or Dr. Ulep acted with deliberate indifference to his serious medical needs. The record

demonstrates that Schilling and Everett deferred to Dr. Ulep about the proper course of treatment for Plaintiff's complaints. Dr. Ulep, in turn, examined Plaintiff and provided regular medical care for his foot. This care included draining a blister, ordering x-rays, providing medication and bandaging supplies to aid Plaintiff's recovery, and a referral for special shoes.[6] Although Plaintiff suggests that his medical condition requires an appointment with a neurologist and corrective surgery, Dr. Ulep concluded that such referrals were neither medically required nor appropriate. Thus, Plaintiff's allegations amount to nothing more than a disagreement between Dr. Ulep and Plaintiff as to the extent of his physical injuries and whether or not he needs to see a specialist or have corrective surgery. Disagreements as to prescribed treatment between a prisoner and physician are not sufficient to state a constitutional claim, absent exceptional circumstances. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *see also Wright*, 766 F.2d at 849; *Womack v. Kober*, No. 7:06-CV-00710, 2006 WL 3526909, at *2 (W.D. Va. Dec. 6, 2006). Plaintiff has set forth no such exceptional circumstances here. *See Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (noting that types of medication prescribed and referrals to specialists are generally matters of medical judgment); *Burke v. McPeak*, No. 7:07-CV-00554, 2007 WL 4571302, at *4 (W.D. Va. Dec. 27, 2007) (stating that a prisoner has no constitutional right to receive a particular treatment or be evaluated by a specialist just because he believes such care is necessary). To the extent Plaintiff makes such a claim, medical malpractice or

---

[6] The record before the Court shows that Dr. Ulep has consistently provided Plaintiff with medical care for other ailments and that Plaintiff has been referred for surgery when it was deemed appropriate. Indeed, Plaintiff was sent to the Medical College of Virginia for surgery when he broke his nose in September of 2006.

10

negligence in diagnosis or treatment cannot form the basis of a constitutional claim. *Estelle*, 429 U.S. at 105-06; *Johnson*, 145 F.3d at 168.

Furthermore, the prison officials in this action, defendants Schilling and Everett, were entitled to rely on the medical judgments and advice of the prison medical staff. *See Miltier*, 896 F.2d at 854; *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (prison officials who lacked medical expertise were not liable for medical staff's diagnostic decision not to refer inmate to specialist).

Plaintiff has simply failed to come forward with sufficient evidence to support his Eighth Amendment claim that Schilling, Everett, or Dr. Ulep were deliberately indifferent to his serious medical needs. *Farmer*, 511 U.S. at 837. Nor has Plaintiff shown a serious or significant physical injury or an unreasonable risk of serious damage to his future health as a result of defendants not scheduling an appointment with a neurologist or corrective surgery with a foot specialist. *Strickler v. Waters*, 989 F.2d 1375, 1380-81 (4th Cir. 1993). Accordingly, Claim 2 will be DISMISSED.

Insofar as Plaintiff seeks an injunction on the ground that defendants Ulep, Schilling, and Everett have failed to refer him to a specialist or to schedule corrective arch surgery, "to survive summary judgment, [plaintiff] must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so." *Farmer*, 511 U.S. at 846. Plaintiff has not submitted such evidence. Rather, the record before the Court reflects that prison staff have been responsive to his medical needs and stand ready to provide further care for his feet if he requests medical care

11

and additional medical care is deemed necessary. Accordingly, Plaintiff's request for an injunction will be DENIED.

## IV. CONCLUSION

For the foregoing reasons, the motions for summary judgment by the Correctional Defendants (Docket No. 22) and by Dr. Ulep (Docket No. 40) will be GRANTED. Plaintiff's claims and this action will be DISMISSED.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
James R. Spencer
Chief United States District Judge

Date: 8-15-08
Richmond, Virginia